## Allen *versus* The Erie City Bank.

| 57 | 129 |
| 173 | 516 |

1. In a scire facias against the garnishee in an attachment-execution, there was evidence that the defendants had received from the garnishees claims for collection.   The defendants were not chargeable with their amount unless they had received them as money or at a stipulated price, or had received money on them or as a credit on the debt due them.

2. J. & R. Carter were defendants in an attachment-execution, Carters & Allen were garnishees,—Carters & Allen, before the attachment, transferred all their estate to W. T. Carter.   Although the transfer was honest, it would not constitute W. T. Carter the debtor of J. & R. Carter unless they accepted him as such.

3. Where a garnishee sets up a defence that the debt due by him was assigned before the attachment, the plaintiff may give evidence that the assignment was not bonâ fide, although the garnishee was not a party to it.

4. The defendants and the garnishees were firms composed partly of the

7 P. F. SMITH—9

[Allen *v.* Erie City Bank.]

same persons.   Nulla bona was the only plea to the scire facias.   Evidence of the insolvency of the garnishees was irrelevant in the defence, the Act of April 14th 1838 (Partnership), treating such firms as distinct persons.

5. The plea of nulla bona puts in issue only the question of effects in the hands of the garnishee.

6. The defendant firm by reason of the attachment were substantially the plaintiffs in the scire facias against the garnishee firm ; the plaintiff in the execution is subject to all the equities which affected the defendants, and before he can *realize* a judgment against the garnishees, it must be ascertained whether the two firms are not equally bound to pay the debt.   The defendants for that purpose allowed to apply for a stay of execution for a reasonable time, that they may ascertain the rights and equities of the parties.

January 23d 1868.   Before THOMPSON, C. J., READ, AGNEW and SHARSWOOD, JJ.   STRONG, J., at Nisi Prius.

Error to the Court of Common Pleas of *Schuylkill county :* to July Term 1867, No. 12.

The Erie City Bank, in a suit brought to December Term 1855 against John Carter and Richard Carter, trading as J. & R. Carter,—on the 15th of March 1858, and after the death of Richard Carter, which was duly suggested, recovered a judgment for $4758.30 against John Carter, the surviving partner.   On the same day, an attachment-execution was issued on the judgment with notice to John Carter and Lucien H. Allen, who survived Richard Carter, lately trading as Carters & Allen, garnishees. This writ was served on John Carter and Allen personally May 18th 1858.   On the 14th of February 1861 the garnishees pleaded " *Nulla bona*," and February 15th the death of John Carter was suggested.   On the trial, before Elwell, P. J., of the 26th District, which commenced May 19th 1864, the garnishee by leave of the court filed this additional plea, that, " on the 1st of October A. D. 1857, the firm of Carters & Allen was dissolved ; that at such dissolution the entire assets of said firm did not exceed the sum of $40,000, and that the partnership debts and liabilities greatly exceeded the entire assets of the firm ; that subsequently Lucien H. Allen, the garnishee, prior to 18th May 1858, settled and assumed to pay in connection with W. T. Carter, the assignee of J. & R. Carter, copartners with the said Lucien H. Allen, partnership liabilities to the sum of $48,000 and upwards ; that the said Carters & Allen, on the day of this dissolution and afterwards on the 18th day of May 1858, were wholly insolvent, and there were no assets, goods, chattels, rights and credits in his hands belonging to the said J. & R. Carter or either of them."

It was shown by the plaintiff's evidence that for some time prior and up to the 1st of October 1857, John Carter, Richard Carter and Lucien H. Allen were doing business in the foundry and machine business in Tamaqua, under the firm-name of Carters & Allen.   They ceased to do business on the day last named.

[Allen v. Erie City Bank.]

John Carter and Richard Carter were at the same time engaged in mining under the firm of J. & R. Carter.

The plaintiff gave evidence by a witness who had been book-keeper of Carters & Allen, that certain books produced were their journal and ledger. Plaintiff then gave evidence from the books that on the 1st of October 1857 there was a balance of $19,750.52 to the credit of J. & R. Carter.

The defendant on cross-examination proposed to ask the witness if there were other books of account, showing accounts against the firm of J. & R. Carter, and other charges against the said J. & R. Carter which do not appear on the pages of the book from which witness has read.

This was objected to by the plaintiff; objection sustained and bill sealed, but allowing defendant to ask witness if he kept any other books than these.

The plaintiff then rested.

The defendant gave evidence that J. & R. Carter were collecting agents for Carters & Allen, and had money of Carters & Allen, and drafts on different persons, amounting to a larger sum than the balance due by J. & R. Carter, and that some of them had been paid.

He also gave in evidence a deed dated October 1st 1857 from John and Richard Carter to William T. Carter, for their interest in the real estate of Carters & Allen or J. & R. Carter, in Schuylkill county or elsewhere in Pennsylvania; the consideration named was $49,250. Also a mortgage from W. T. Carter, Allen and John Carter for $58,312.36 on the foundry and machine-shop at Tamaqua, in trust for the creditors of Carters & Allen. Also evidence that some time after October 1st 1857 John Carter directed the claims of Carters & Allen, which had been placed in J. R. Carter's hands for collection, to be charged to them. Also that a statement showing an indebtedness of about $70,000 from Carters & Allen to J. & R. Carter was after October 1st 1857 admitted by J. Carter to be correct; also on that day a bill of sale from Carters & Allen to W. T. Carter of all their personal property, book-debts included, and that he got possession of all, the consideration being the payment of their debts; also of payment by W. T. Carter and Allen of debts of J. & R. Carter, and by W. T. Carter of debts of Carters & Allen.

The defendant offered evidence that "the firm of Carters & Allen was insolvent at the time the writ of attachment was issued and served, and is still insolvent; that the assets of the firm amounted to about $40,000, and the indebtedness over $70,000.

They also offered "seven attachment-executions against J. & R. Carter, issued and served on defendant, as garnishee, prior to the issuing and serving of the present attachment-executions, amounting to upwards of $4600."

[Allen *v.* Erie City Bank.]

Also "that before the 18th day of May 1858, the assets of Carters & Allen had passed out of the hands of the surviving partners, and that then there was no property in the hands of the defendant; the assets had been applied to the firm-debts; and that there was a large amount of indebtedness still outstanding against said firm; that before the day aforesaid John and Richard Carter were indebted to Allen in large sums, which Allen had paid out for said firm, and for which the Carters were bound to make contribution to Allen."

These offers were severally objected to by the plaintiff, rejected by the court and bills of exception sealed.

The defendant having rested, the plaintiff offered judgments against J. & R. Carter, amounting to $131,891.68, entered between 1853 and 1858—principally in 1857 and 1858—for the purpose of showing the insolvency and indebtedness of J. & R. Carter in the year 1857, to be followed by proof of the conveyance of all the property of J. & R. Carter to W. T. Carter, with the knowledge of L. H. Allen, upon the 1st October 1857. Also, that the several assignments and transfers of property from Carters & Allen and J. & R. Carter to W. T. Carter, were fraudulent and void—made for the purpose of hindering and delaying creditors.

The offers were severally admitted against the objection of the defendant, and bills of exceptions sealed. There was much other evidence given on both sides, bearing on the question of the bona fides of the transfers to W. T. Carter.

The defendant submitted several points, two of which are as follows:—

3. If the jury believe that J. & R. Carter had in their hands notes, drafts and accounts given for the work, labor and materials of the shop of Carters & Allen, to a larger amount than the balance of account given in evidence by plaintiff, the law in the absence of any specific agreement or charge authorizes L. H. Allen to defalcate these funds against said balance, and if the aggregate amount of said funds is equal to or exceeds said balance, plaintiff cannot recover.

4. If the jury believes that the assignment by Carters & Allen, 1st October 1857, was an honest transaction, then the verdict should be for defendant.

The Court thus answered these points:—

"I cannot affirm the doctrine of the third point as broadly as requested. If J. & R. Carter received notes, drafts and accounts from Carters & Allen, and received and retained the money thereon, or if they took them as payment of their account, then L. H. Allen, representing Carters & Allen, might defalcate the amount against the balance due J. & R. Carter. But the mere fact that these claims were in their hands, without regard to

whether they were collected or collectable, would not authorize such defalcation."

" I refuse to charge as requested in the defendant's 4th point. The transaction which we are investigating relates to the sale or assignment by J. & R. Carter to Wm. T. Carter. That made by Carters & Allen is not a bar to plaintiff's recovery."

The court further charged:—

\* \* \* " If the jury believe that the assignment by J. & R. Carter to Wm. T. Carter was an honest transaction, their verdict should be for the defendant. On the other hand, if you find that it was made without consideration, the assignee at the time knowing of the insolvency of the Carters, or if it was made with the intent of hindering, delaying or defrauding their creditors, with the knowledge of Wm. T. Carter, whether a consideration were paid or not, it would be void as against the creditors of Carters.

" The transfer, sale or assignment of this debt will therefore be held by you as valid or void according to your belief as to whether it was honest or fair, or was concocted as a cover to shield the property of the Carters from levy or attachment for their debts.       \*       \*       \*       \*       \*       \*       \*

" The transactions we are investigating relate to the sale or assignment by J. & R. Carter to W. T. Carter. That made by Carters & Allen is *not a bar* to plaintiff's recovery. If you find the sale in question valid, you need not extend your inquiries any further. But if you find that it was fraudulent, you will then proceed to ascertain the amount of the indebtedness, if any, of Carters & Allen to J. & R. Carter on the 18th day of May 1858."

The jury returned a special verdict: " That prior to October 1st 1857, and up to that day, there existed a firm composed of John and Richard Carter and L. H. Allen, doing business under the firm-name of Carters & Allen, and that at the same time there existed a firm composed of John and Richard Carter, doing business under the firm-name of J. & R. Carter; that on the said 1st day of October 1857, both of the firms ceased to do business; that on that day the firm of Carters & Allen was indebted to the firm of J. & R. Carter in the sum of $16,034.06, for goods sold and delivered, and other matters of book account, which indebtedness continued to the time of the attachment served, unless discharged by the facts hereinafter stated; that on the said 1st day of October, all the effects of the said firm of Carters & Allen were transferred to Wm. T. Carter, upon the consideration of his paying all the debts of said firm; that said firm was then insolvent, its assets not being more than $45,000, and its liabilities amounting to more than $70,000; that Richard Carter died in November 1857, insolvent, and that John Carter died on the 4th

[Allen *v.* Erie City Bank.]

day of February 1864, insolvent; that subsequently to 1st October 1857, L. H. Allen went into partnership with the said Wm. T. Carter, under the firm-name of Carter & Allen, and that the firm last named has paid all the debts of the firm of Carters & Allen to its creditors (except the sum above named as a balance due to J. & R. Carter). We also find that there is due at this time upon the judgment of the Erie City Bank, upon which the attachment issued in this case, the sum of $6523.51."

The court afterwards, December 3d 1864, ordered, that judgment be entered for the plaintiff for $6523.57, against Lucien H. Allen, surviving partner of the late firm of Carter & Allen; interest from May 21st 1864; which judgment shall be subject to be cancelled or discharged, wholly or in part, by the order of the court, according to the result of any bill filed in any court of equity (having jurisdiction of the case), by which the equities between the said L. H. Allen and his late partners shall be ascertained, as the same existed at the time of the attachment levied.

The restriction to this judgment was afterwards, on a writ of error by the plaintiff, modified by the Supreme Court, as follows:—

"It is, therefore, now considered by the court, that the said Erie City Bank do recover of the said Lucien H. Allen, the garnishee, the sum of $6523.57, with interest from the 21st of May 1864, to be levied of the debt in the hands of the said Lucien H. Allen, as surviving partner of the late firm of Carter & Allen, or so much thereof as shall be sufficient to satisfy the said sum, with interest and costs; and if the said Lucien H. Allen refuse or neglect, on demand of the plaintiff, to pay the same, then to be levied of the proper goods and chattels, lands and tenements of the said Lucien H. Allen, according to law, as in the case of a judgment against him on his proper debt, and that the said Lucien H. Allen be thereupon discharged, as against the said John and Richard Carter, for the sum so attached and levied of the debt and moneys in his hands."

The defendant then took a writ of error. He assigned for error,—

1. The answer of the court to his 3d point.

2. The answer of the court to his 4th point.

3. The charge of the court as contained in the first two paragraphs given above.

4. The charge as contained in the fourth paragraph.

Also the several bills of exception to the admission and rejection of evidence.

*J. W. Ryan* and *B. Cummings*, for plaintiff in error, cited Myers *v.* Baltzel, 1 Wright 493; Lucas *v.* Laws *et al.*, 3 Casey

[Allen v. Erie City Bank.]

211; Baker's Appeal, 9 Harris 82; Walker v. Eyth, 1 Casey 216; Fessler v. Ellis, 4 Wright 248; 5 Ves. 396; Gould v. Gould, 6 Wend. 263; Gow on Partnership 234, n.; Lytle v. Ault, 7 Exch. 699; Arnold v. Campbell, 12 John. 409; James v. Hackley, 16 Johns. 373; Harris & Donaldson v. Linsey, 4 W. C. C. R. 271; Thompson v. Percival, 5 B. & Ad. 925; 3 Nev. & Man. 167; Kirwan v. Kirwan, 4 Tyrwh. 491; Cumber v. Wane, 1 Strange 425; 1 Sm. L. Cas. 146 and notes.

*F. B. Gowen*, for defendant in error.—Set-off must be of demands between the same parties, and due in the same right: Darroch's Ex'rs. v. Hays' Adm'rs., 2 Yeates 208; Prouty v. Hudson, 3 Am. L. Reg. 40.

As to the 2d and 4th assignments, he cited 1 Sm. L. Cas. (new ed.) 452; McIntyre v. Kennedy, 5 Casey 453, 454.

It could be shown that the assignment to W. T. Carter was fraudulent: Sinnickson v. Painter, 8 Casey 384. Whether anything was due to J. & R. Carter by Allen is not now to be considered: Act of April 14th 1838, § 1, Pamph. L. 457, Purd. 776, pl. 3; Hepburn v. Curts, 7 Watts 300; Tassey v. Church, 6 W. & S. 465; Meconkey v. Rogers, Bright. Rep. 450; 1 Tr. & H. Pr. 969; Flanagin v. Wetherill, 5 Wh. 286; McCormac v. Hancock, 2 Barr 311.

As to the rejection of prior attachments:—*Nulla bona* is the proper plea: Act of 1705, § 2, 1 Sm. L. Cas. 46, Sergt. on Attachment 99, 101; Wood v. Roach, 1 Yeates 177; Maynard v. Nekervis, 9 Barr 81, 1 Tr. & H. Pr. 954; Farmers' Bank v. Little, 8 W. & S. 219; Walker v. Gibbs, 2 Dall. 211; Kase v. Kase, 10 Casey 128.

The opinion of the court was delivered, February 20th 1868, by Thompson, C. J.—This controversy results from proceedings on an execution attachment, issued by the bank against the firm of J. & R. Carter, with service on the surviving partners of the firm of Carters & Allen, and summons of them as garnishees. Subsequently, and before the issue on the sci. fa. was tried, John Carter, another of the firm, died, which left Lucien H. Allen as surviving partner of the firm.

John and Richard Carter, composed a mining and coal dealing firm, by the firm-name of J. & R. Carter; and John and Richard Carter and Lucien H. Allen composed another and distinct firm, under the firm-name of Carters & Allen, and carried on a foundry and machine shop at Tamaqua, Schuylkill county. These firms were entirely distinct in their objects and business, although composed in part of the same members.

The plaintiff below believing the latter of these firms to be

indebted to the former, issued their execution attachment as already stated, and attached the debt in the hands of the surviving member of that firm, Lucien H. Allen. The answer of Allen to the interrogatories propounded to him, not being satisfactory as to the existence of the alleged indebtedness of his firm to the firm of J. & R. Carter, the attaching creditor proceeded on the sci. fa. to establish it. The defendant pleaded *nulla bona*, and a special plea, alleging the dissolution of that firm, its insolvency, the application of all its assets to its debts, and that there were no assets, goods, chattels, rights and credits of J. & R. Carter in his hands. As we consider the case, it was tried on the plea of *nulla bona* without much reference to the special plea, which I presume was regarded in substance the same thing as the short plea, and a special verdict was rendered for the plaintiff for the sum of $6523.31, and that the indebtedness of the garnishee's firm to the firm of J. & R. Carter, at the date of the attachment, was $16,034.06, and that it was insolvent at the time. Judgment was subsequently entered in favor of the plaintiff for the sum of $6523.31, "subject to be cancelled or discharged wholly or in part by the order of the court, according to the result of any bill filed in any court of equity having jurisdiction of the case, by which the equities between the said L. H. Allen, and his late partners shall be ascertained, as the same existed at the time of the attachment levied."

This is an outline of the history of the case, so far as is necessary to be stated, in order to understand the exceptions which are now to be considered.

As to the first specification of error, which is to the answer of the learned judge to the defendant's 3d point, we think it is not sustained. The firm of J. & R. Carter were not chargeable with the amount of notes, drafts and accounts due the firm of Carters & Allen in their hands, unless they were shown to have received them as money, or at some stipulated price, or had received the money on them, or that they had been received as a credit on their claim. This was what the learned judge charged and left as questions for the jury. There was no error in this.

Nor was there error in the second specification. The honesty of the transfer of Carters & Allen to William T. Carter, would not constitute the latter, the debtor of J. & R. Carter, unless they agreed to accept him as such. That they had so accepted him, was not alleged in the point. If that fact had appeared, and the transfer honest, it would have greatly aided the defendant; for his firm might then have been free from responsibility for the debt, another having undertaken to pay and been accepted by the creditor before the attachment issued. Relying on the assignment made on the same day by J. & R. Carter to W. T. Carter, by which their claim against Carters & Allen passed, it was only necessary that the last-named assignment should be honest to give

full effect to the transfer of the liability of Carters & Allen to him. In that case the debt would be extinguished, William T. Carter being the party entitled to receive what he was bound by the assignment of the Carters & Allen firm to pay. But unfortunately for the defendant, the jury found that the transfer of J. & R. Carter to William T. was fraudulent and void; and the effect expected, if the transfer of the Carters & Allen firm was honest, was defeated, and the case was left to stand on the naked agreement of William T. Carter to pay the debts of the firm of Carters & Allen, without any proof of acceptance by J. & R. Carter to receive him as their debtor instead of the firm. This no doubt accounts for the absence of proof, or an attempt to prove, an acceptance of W. T. Carter as the debtor of J. & R. Carter. It is possible also, that it was not attempted for want of testimony. There is no error in the answer of the court declining to charge as requested in the defendant's 4th point.

There was certainly no error in the charge on the question of the bona fides of the alleged transfer by J. & R. Carter to William T. Carter. It was assailed on the ground of fraud; that it was intended to delay, hinder and defraud creditors. Whether it was secret, depended on the inference the jury might draw from the facts, which were submitted to them with unexceptionable instructions.

The defendant gave the evidence of this alleged assignment, which if valid was a transfer of the debt due J. & R. Carter from Carters & Allen, before the attachment was served. If a garnishee may set up such a defence, and Sinnickson v. Painter, 8 Casey 284, is an authority that he may, it follows that it may be contested. It was only in affirmance of this position that the learned judge submitted the facts to the jury to say whether the transaction was honest or fraudulent. That there was evidence on this point, was the fault of the defendant in setting up the assignment. Plaintiff was certainly not wrong in trying to show that it was not a bonâ fide transaction, and the court was right in submitting the evidence on the point to the jury.

The next complaint of the charge is without foundation also. It was the sale, or assignment of J. & R. Carter to William T. Carter, which the court thought important, and which, if found to be honest and fair, would put an end to all further necessary inquiry by the jury. Nothing could be truer than this, for it would be a transfer and assignment for value of the debt in suit before the attachment issued. This we have already noticed. It was therefore entirely proper to say that the assignment, if good, would be a bar to the plaintiff's recovery, and that that made by Carters & Allen, if honest, would be no bar. The reason for this we have given.

There are several specifications of error based on the rejection

[Allen *v.* Erie City Bank.]

and admission of evidence. As to the first, the court allowed the witness to testify that there were other account-books of J. & R. Carter, showing accounts and charges against that firm, and in favor of Carters & Allen not present, but declined to allow him to speak of their contents. The party had not put himself in the position to give secondary evidence, without showing something entitling him to it, such as a notice to produce the books, and therefore the court ruled the point of evidence properly.

The next complaint of error is to the admission of evidence to show the insolvency of J. & R. Carter by the record of judgments in the Common Pleas of Schuylkill county, to be followed by the evidence of the assignments to William T. Carter, with the knowledge of the defendant that the firm was insolvent. This was evidence on the question of the bona fides of that sale, and proper to be received. It is complained that it ought not to affect Lucien H. Allen, as he was not a party to it. Neither should it, but as he claimed to show that the debt for which he was attached passed out of J. & R. Carter before the attachment issued, and was vested in William T. Carter, and was therefore extinguished, it was important to the other side to show that it was fraudulent and void. We see no error in this. The next exception stands so nearly on the same principle, that we think we need not discuss it to show that there is no error in it.

The succeeding error is assigned upon the rejection of an offer by the defendant to show that the firm of Carters & Allen, was insolvent at the date of the service of the attachment. The special verdict finds that. But the purpose of the evidence as given was to show, that there was consequently no indebtedness to the firm of J. & R. Carter, who were members of the firm of Carters & Allen, subject to attachment; the partnership creditors of Carters & Allen being entitled to priority of payment over the claim of J. & R. Carter, and that the attachment, which was in the nature of an execution, could hold nothing but a mere right to an account against the firm of Carters & Allen, or the garnishee Allen.

Although we think that at some stage or other an opportunity must be afforded to settle the equities between the parties composing the defendants' firm, yet it could not be easily done under the provisions of the Act of Assembly of 14th April 1838, in an action at common law between the firms directly. The plea of *nulla bona* was really the only issuable plea in this case. The question under that obviously was, whether there was a debt due by the defendants' firm to the plaintiff's firm. The Act of Assembly referred to, authorizes suits by one firm against another, composed partly of the same persons; it directs that the trial shall proceed as if the firms were composed of different persons. If there had been entirely different persons in these two firms, it will not admit of a doubt that the proposed testimony would have been

[Allen *v.* Erie City Bank.]

entirely irrelevant. Want of assets or insolvency would not have been a bar to a judgment, whether it would avail anything would depend on other considerations. On the pleadings, we think the rejection of the offer was inevitable.

If I understand the argument of the counsel for the plaintiff in error on this point, it proceeds on the idea that J. & R. Carter, and consequently the plaintiff below, who occupies their position, are not creditors of the firm of Carters & Allen, but claim merely as members of that firm, and must be postponed to creditors of the firm. I can make only this out of the argument. But this overlooks what was neither disputed nor attempted to be disproved, viz.: that these firms were distinct, and that the plaintiff was a creditor, and in a condition to attach property and effects belonging to the firm of J. & R. Carter whenever it could find it. There is no room for complaint on the ground that the exclusion of this evidence prevented the defendant from proving the insolvency of the firm of Carters & Allen at the date of the service of the attachment. That the verdict finds. We think this assignment of error is not sustained for these and other reasons.

The 5th exception on the subject of testimony was to the rejection of the defendant's offer to prove the existence of prior attachments against the firm of J. & R. Carter, served on the defendant as garnishee, but whether as surviving partner or not of Carter & Allen is not stated, nor whether the debt in controversy was attached on either of them. These things do not appear in the offer. We see not, under the pleadings, how the evidence could have been received. Conceding that it might possibly have been evidence under the plea of *nulla bona* with notice of special matter, notice was not given. The plea without this, we think, only put in issue the question of goods and effects in the hands of the garnishee. This is not only reasonable in itself, but seems to be supported by Flanigan *v.* Wetherill, 5 Whart. 286, McCormac *v.* Hancock, 2 Barr 311, and Sergeant on Attachments 90. That notice of special matters should have been given in a case where the plea was *nulla bona*, and the offer was to show a lien for freight due the garnishees, was held in Wood *v.* Roach, 1 Yeates 177. Without further discussion, we think there was no error in this part of the case. Indeed, in Kase *v.* Kase, 10 Casey 128, it was ruled that such evidence would not bar the plaintiff, but might be considered in the judgment.

The last exception is to the refusal of the court to receive evidence that all the assets of the firm of Carter & Allen had passed out of the hands of the surviving partners of that firm, prior to the service of the plaintiff's attachment; that before that day they had been applied to firm debts; that there was a large amount of debts still unpaid, and that J. & R. Carter were indebted to the said L. H. Allen in large sums, which said Allen had

[Allen *v.* Erie City Bank.]

paid out for said firm of Carters & Allen, which the said Carters were bound to contribute to.

Under the pleadings, and in the existing form of action, we think the testimony was properly rejected. We have given our views on a point similar to this in a preceding portion of this opinion, and need not repeat it here.

Tassey *v.* Church, 6 W. & S. 465, is in its material features like this case. One firm sued and recovered judgment against another, both composed in part of the same members. The plaintiffs' judgment was over $13,000. There was no joint property belonging to defendants, as the sheriff's return of *nulla bona* showed. One of the defendants sued out a writ of error, and at the same time filed a bill in the equity side of the court, alleging the indebtedness of one or more of the members of the plaintiffs' firm, who were also members of the defendants', praying an account and injunction against issuing execution. The judgment was affirmed, but before that the court stayed execution, and the plaintiffs took a writ of error to that, and this court held the stay right and proper until the equities of the partners in the defendants' firm could be adjusted. The opinion of Gibson, C. J., refers largely and justly to the anomalous condition in which partners may be placed under the Act of 1838, and the mode by which injustice might be prevented when there is insolvency in the debtors' firm. He said: " The action authorized by the statute may readily be conducted to judgment; but how it could be thought that a writ of execution might be applied to the separate estate of the individuals who compose the debtor firm, without doing injustice to some of them, or producing some whimsical absurdity, it would require all the ingenuity of the person who framed the act to explain." He goes on to say that the action by one firm against the other, authorized by the act, was doubtless intended only to settle the question of indebtedness between them, and that to subject the joint effects to seizure was perhaps all that was contemplated. The statute, however, goes further than this, as this case concedes, by holding it to have been a proper exercise of judicial power, in that case, as there were no joint assets, to restrain execution until it could be ascertained how the equities stood between the members of the firms composed in part of the same persons; whether the private estates of partners in a defendant firm, should be sold to pay a firm debt on which they were plaintiffs before their liabilities to each other were ascertained. The levy was set aside and execution stayed until the equities should be settled between the members of the defendant firm. In the case now before us, John and Richard Carter were members of the defendant firm with Allen. Their representatives, or estates, are substantially plaintiffs by reason of the attachment proceedings, and before their creditors can

[Allen *v.* Erie City Bank.]

stand where they stood and can claim what they could have claimed and be subject to the equities which would have affected them, there should be a settlement of accounts to ascertain if Allen, the survivor of the firm of Carters & Allen, is owing to his copartners any money, or how much; in other words, whether their estates as well as his are not equally bound to pay the debts.   If they are, it would be great injustice to call on him to pay their creditors, when on settlement it might appear their estates ought to contribute.   The learned judge attempted to provide for this by a condition in the judgment on the special verdict. This was modified when the case was brought before us by the defendant in error in this writ. .

The judgment is now unconditional against Allen, the surviving partner, and as there are no firm assets as it stands, his private estate would be ultimately liable.   In order to reach the equities between those who constituted the firm of Carters & Allen, we think there ought to be a stay of execution granted until this is ·ascertained by proceedings in equity, or otherwise, to be instituted by one or other of these parties, to ascertain the extent of Allen's liability, if any.

What effect the action of the firm of Carter & Allen, composed of William T. Carter and Lucien H. Allen, may have on the inquiry which will ensue in the proceedings, we do not say, but it does appear by the special verdict that William T. Carter took an assignment of the assets of the firm of Carters & Allen, and agreed to pay all their debts; that Lucien H. Allen became a partner with him, and that they paid all the debts of the firm with the exception of the debt due the firm of J. & R. Carter, amounting to $16,034.06, and that that remains unpaid.   Whether by becoming a member of that last firm, his position will be changed, we will not now say, but this will be a question in that investigation undoubtedly.   Pursuing the course adopted in Tassey *v.* Church, *supra*, we will affirm the judgment, and let the defendant apply for a stay of execution until proceedings shall be instituted by him, within a reasonable time, in the name of proper parties, to ascertain the rights and equities of the parties.

Judgment affirmed accordingly. .